UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MR. LUIS A. RODRIGUEZ,

        Plaintiff,

   -vs-

CITY OF ROCHESTER, and WILLIAM
MASON, HERBERT MCCLELLAN, ALBERTO
SANTIAGO, and RANDY POTUCK, each in
his individual and official
capacities,

        Defendants.

**DECISION AND ORDER**
**No. 6:13-cv-06301(MAT)**

---

## I. Introduction

Represented by counsel, Luis A. Rodriguez ("Plaintiff") instituted this action on June 13, 2013, pursuant to 42 U.S.C. § 1983 against the City of Rochester ("the City") and four individual police officers employed by the City's Police Department, William Mason ("Officer Mason"), Herbert McClellan ("Officer McClellan"), Alberto Santiago ("Officer Santiago"), and Randy Potuck ("Officer Potuck") (collectively, "the Officers"). Plaintiff filed an amended complaint on February 12, 2015, alleging causes of action for the use of excessive force, along with state law claims of assault, battery, negligent infliction of personal injury, and negligent hiring, training, and supervision. The City and the Officers (collectively, "Defendants") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt

#43) dismissing the amended complaint. Plaintiff has opposed the motion (Dkt #47). Defendants have not filed a reply brief. For the reasons discussed below, the motion is granted in part and denied in part.

**II. Factual Background**

The following facts are drawn from the pleadings, exhibits, and deposition transcripts on file in this matter, and, unless otherwise noted, are construed in the light most favorable to Plaintiff.

On the morning June 13, 2012, Officers Santiago, Potuck, Mason, and McClellan participated in a multi-agency warrant detail along with probation officers from the New York State Division of Parole and New York State Troopers. At about 7:30 a.m., they arrived at 310 Clay Avenue in the City of Rochester, where Plaintiff was thought to be residing. Officers Potuck and Mason stationed themselves on the north side of the L-shaped, three-story, multi-residence dwelling building, about 20 feet away from the structure. Officer Mason saw Plaintiff, wearing only shorts and barefoot, running straight down the steeply pitched roof. Officer Potuck announced he was with law enforcement and directed Plaintiff to come down off the roof. According to Officer Mason, Plaintiff did not heed his instructions and continued descending the roofline, grabbing onto the fire escape ladder with one hand. The ladder extended towards the ground with Plaintiff hanging onto it,

but he apparently lost his grip and ended up falling to the ground from a height of about 6 to 7 feet. Officer Mason related that once on the ground, Plaintiff charged at Officer Potuck, and Officer Potuck punched him. Plaintiff broke away and ran back to the building where he tried to ram through a door to get back inside. According to Officer Mason, they were unable to hold onto him because Plaintiff was swinging his elbows. At that point, Officer Mason used his Taser gun on Plaintiff, who went to the ground. Plaintiff was handcuffed and brought to Rochester General Hospital ("RGH") for medical treatment for "minor lacerations, severed right long finger, and Taser exposure." Dkt #43-11, p. 3.[1] The officers retrieved the severed piece of Plaintiff's finger and had it transported by ambulance staff to RGH.

Plaintiff admits that, at first, he attempted to escape by going onto the roof of the building. However, Plaintiff states, upon seeing that the building was surrounded by law enforcement officers, he decided to end his flight and began climbing down from the roof via a fire escape. According to Plaintiff, one or more of the officers pulled him off the fire escape, which caused a portion of one of his fingers to be severed. Plaintiff states he remained on the ground until he was moved by the officers. Plaintiff denies charging at or attempting to strike the officers, whom he states

---

[1] Page citations for documents filed electronically refer to the page numbers assigned by the CM/ECF system.

struck him on his head and body.

**III. Summary Judgment Standard**

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995) (citing FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986)). The movant bears the burden of "showing that no genuine factual dispute exists. <u>Id.</u> (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)). In evaluating the record for the existence of genuine issues of material fact, "the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." <u>Cronin</u>, 46 F.3d at 202 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); other citations omitted). The reviewing court must bear in mind that, on summary judgment, it "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" <u>Cronin</u>, 46 F.3d at 203) (quoting <u>Donahue v. Windsor Locks Board of Fire Commissioners</u>, 834 F.2d 54, 58 (2d Cir. 1987) (quotation marks omitted in <u>Cronin</u>); other citations omitted).

**IV. Merits of Defendants' Summary Judgment Motion**

    **A.   Excessive Use of Force (First Cause of Action**)

        **1.   Analysis**

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Feshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). The Fourth Amendment's test of reasonableness "is one of objective reasonableness," Graham, 490 U.S. at 399, making the inquiry "necessarily case and fact specific[,]" Tracy, 623 F.3d at 96. Courts are to consider "at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Id. (citing Graham, 490 U.S. at 396; Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006)).

Defendants argue that Plaintiff's "evasive actions . . . at the time of the law enforcements [sic] arrival, during his run along the roof of a three story building, his leap from the roof to a fire escape ladder, his subsequent fall down the ladder and then finally his actions upon hitting the ground . . . necessitating the use of a cap stun demonstrates [sic] that [their] actions . . . were objectively reasonable." Dkt #43-3, p. 5.

After reviewing the parties' submissions, the Court finds that Defendants have not fulfilled their burden of showing that no genuine factual disputes exist with regard to Plaintiff's excessive force claim. As Plaintiff notes, there are multiple questions of

fact as to whether Defendants exceeded the constraints of the Fourth Amendment. First, there are issues of fact regarding whether his finger was severed as a result of being pulled off the fire escape by Officers Mason and Potuck, or as a result of his own actions. Second, there are issues of fact as to whether he charged at Officers Mason and Potuck and resisted arrest, or whether they used the Taser on him and struck him without provocation. Plaintiff has submitted sworn statements from two of his neighbors, Michelle Murphy ("Murphy") (Dkt #47-2) and Maria Velasquez ("Velasquez") (Dkt #47-3), supporting his version of events. Murphy states that she saw one police officer use a Taser on Plaintiff when he was still hanging from the fire escape. According to Murphy, as another officer pulled him down, Plaintiff's finger got caught in the fire escape and got "torn off." Murphy states that it appeared as though Plaintiff was trying to give himself up, and she heard him screaming in pain. Both Murphy and Velasquez relate that they witnessed police officers punching and kicking Plaintiff while he was on the ground. According to Velasquez, one officer said, "'Let's see you run now.'" Dkt # 47-3, p. 1.

"For the purposes of a summary judgment motion," the Court is "required . . . to suspend judgments on credibility." Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995); see also Jeffreys v. City of N.Y., 426 F.3d 549, 551 (2d Cir. 2005) ("[T]he general rule [is] that district courts may not weigh evidence or assess the

credibility of witnesses at the summary judgment stage[.]"). As the foregoing discussion of the record illustrates, Plaintiff and Defendants offer materially different accounts of the June 13, 2012 incident. See, e.g., Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (finding dismissal of an excessive force claim inappropriate where there were "genuine issues of material fact concerning what transpired"). The Court finds that Plaintiff's evidence, consisting of his affidavit and the two sworn statements of his neighbors who witnessed the incident, indicates the existence of disputed facts as to whether or not Officers Mason and Potuck applied excessive force in effecting Plaintiff's arrest. Also, the record presents a material question of fact with respect to the extent to which Plaintiff was resisting arrest. E.g., Bennett v. Falcone, No. 05-CV-1358(KMK)(LMS), 2009 WL 816830, at *5 (S.D.N.Y. Mar. 25, 2009) (citing Genia v. New York State Troopers, No. 03-CV-870, 2007 WL 869594, at *19 (E.D.N.Y. Mar. 20, 2007) (denying summary judgment on excessive force claim where there was material factual dispute as to whether Plaintiff resisted arrest)); see also Kerr v. Valle, 903 F. Supp. 595, 599 (S.D.N.Y. 1995) ("[T]he facts in dispute create a genuine issue of material fact as to who initiated the use of force and how much force was used, rather than merely whether the force used was reasonable. Kerr and Duncan's assertions, that Valle repeatedly punched Kerr in the face while handcuffed and cooperative, if accepted by the jury, would suffice

-7-

to sustain a claim of excessive force.").

### 2. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citations omitted). Thus, the defense of qualified immunity is established "only if (1) the officers' actions did not violate clearly established law, or (2) it was objectively reasonable for the officers to believe that their actions did not violate such law." Green v. Montgomery, 219 F.3d 52, 59 (2d Cir. 2000) (citing Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996)).

An individual's "right to be free from excessive force has long been clearly established." Green, 219 F.3d at 59 (citing Salim, 93 F.3d at 91). "That there are constitutional limitations on the use of deadly force during the course of an arrest is also clearly established." Salim, 93 F.3d at 91 (citing Graham, 490 U.S.

-8-

at 395-96 (further citation omitted)). Because Plaintiff has raised a genuine issue of material fact as to the propriety of the Officers' use of excessive force, it "follow[s] that he has raised a valid issue of fact with respect to the first branch of the qualified immunity defense." Green, 219 F.3d at 59; see also Bennett, 2009 WL 816830, at *6 ("For the same reasons Plaintiff's excessive force claim survives summary judgment, the Court holds Defendants' qualified immunity claim insufficient.").

Turning to the second basis for qualified immunity, "[t]he objective reasonableness test is met if 'officers of reasonable competence could disagree' on the legality of the defendant[s'] actions." Green, 219 F.3d at 59 (quoting Salim, 93 F.3d at 91). Given the Court's finding that there are genuine issues of material fact regarding whether Plaintiff continued to attempt to flee, resisted arrest, and attempted to strike the officers, the Court concludes that, as a matter of law, the second basis for qualified immunity cannot apply. See, e.g., Green, 219 F.3d at 59 ("If there is a genuine issue of material fact as to whether Green drove the jeep in a reckless manner at Montgomery, then there is a genuine issue of material fact as to whether officers of reasonable competence could disagree as to the legality of the defendants' actions.").

In sum, because material issues of fact remain in dispute regarding, e.g., the reasonableness of the Officers' conduct during

the June 13, 2012 incident, the Court may not reach qualified immunity on summary judgment. See, e.g., Ostroski v. Town of Southold, 443 F. Supp.2d 325, 339-40 (E.D.N.Y. 2006) ("[I]f plaintiff's claim that she did nothing to resist arrest is true, it would not be objectively reasonable for the defendants or any reasonable officers in their situation to believe that probable cause to prosecute plaintiff for that charge existed. Since there is a disputed issue of material fact as to whether the circumstances would allow an objectively reasonable officer to believe that probable cause existed to prosecute for resisting arrest, defendants are not entitled to qualified immunity as a matter of law.") (citing Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994); other citations omitted).

### B. State Law Claims for Assault and Battery (Second and Third Causes of Action)

It appears that Defendants intended to move for summary judgment as to all of Plaintiff's state law claims, since Defendants' memorandum of law contains a section titled, "ASSAULT/BATTERY/NEGLIGENCE". Dkt #43-3, p. 10. However, Defendants do not offer any arguments specifically directed to Plaintiff's intentional tort theories of liability (assault and battery), and only argue that the Officers were not negligent during the June 13, 2012 incident. See id. As discussed further below, the Court finds that summary judgment is not warranted on these claims.

Turning first to the assault and battery claims, New York law defines an assault as "an intentional placing of another person in fear of imminent harmful or offensive contact," while a battery is "an intentional wrongful physical contact with another person without consent." United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993). "The same standard is used to evaluate claims of assault and battery under New York law and of excessive force under the Fourth Amendment." Anthony v. City of N.Y., No. 00 Civ. 4688(DLC), 2001 WL 741743, at *13 (S.D.N.Y. July 2, 2001) (citing Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991) (noting that the "essential elements" of a claim under 42 U.S.C. § 1983 for excessive force and of state law claims for assault and battery are identical)); accord, e.g., Chamberlain v. City of White Plains, 986 F. Supp.2d 363, 398 (S.D.N.Y. 2013) (citing Posr, 944 F.2d at 94-95). Because, as discussed above, there are genuine issues of material fact as to whether Officers Mason and Potuck used excessive force against Plaintiff, there are likewise genuine issues of material fact as to whether they committed assault and battery against Plaintiff. E.g., Benson v. Yeager, No. 05-CV-784S, 2009 WL 1584324, at *10 (W.D.N.Y. June 23, 2009); see also DeVito v. Barrant, No. 03-CV-1927, 2005 WL 2033722, at *7 (E.D.N.Y. Aug. 23, 2005) (denying summary judgment as to state law assault and battery claims based on prior determination that summary judgment should be denied as to plaintiff's excessive force claim brought

-11-

under 42 U.S.C. § 1983). Therefore, summary judgment is denied as to Plaintiff's second and third causes of action for assault and battery.

### C. Negligence by the Officers Resulting in Personal Injury (Fourth Cause of Action)

With respect to Plaintiff's negligence cause of action alleging that the Officers violated their duty of care toward Plaintiff, Defendants make the circular assertion that "any *action for negligence* would be a discretionary act by a police officer and would not form the basis for a cause of *action in negligence*." Dkt #43-3, p. 10 (emphases supplied). Defendants then cite to two New York state cases without pinpoint citations or parentheticals. It is unclear to the Court what Defendants are intending to argue under this point heading. In his opposition brief, Plaintiff also noted his confusion as to the basis for Defendants' argument. As Plaintiff asserts, he is permitted to plead a negligence claim in the alternative to his claims of intentional torts against the Officers. E.g., Hodge v. Village of Southampton, 838 F. Supp.2d 67, 89 n. 14 (E.D.N.Y. 2012) (citations omitted). Defendants have not met their burden of showing their entitlement to judgment as a matter of law on Plaintiff's negligence claims, and summary judgment is denied.

### D. Negligent Hiring, Retention, Training, and Supervision (Fifth Cause of Action).

Plaintiff's Fifth Cause of Action alleges, in conclusory

fashion, that the City "negligently hired, retained, trained and/or supervised" the Officers who are defendants in this action, and that the City "knew or should have known of its employees' propensity for the conduct that caused the injuries to Plaintiff." Dkt #37, ¶¶ 30, 32. Defendants urge dismissal on the basis that the City, in its answer, admitted that all Officers were employed by the City at the relevant time. Dkt #43-3, pp. 8-9. Moreover, Defendants assert, there is no dispute that the Officers were acting within the scope of their employment duties at the time of the incident. See Dkt #43-2, ¶ 1 ("On June 13, 2012, William Mason, Herbert McClellan, Alberto Santiago and Randy Potuck were employed as police officers by the City of Rochester Police Department."); id., ¶ 2 ("On June 13, 2012, the afore-named officers were part of a multiagency warrant detail and were working that detail on the morning of that date.") (citations to exhibits omitted). As far as the Court can tell, Plaintiff's memorandum of law does not respond to Defendants' argument. Therefore, Plaintiff effectively has abandoned them, and it is appropriate to grant Defendants' request for summary judgment. See, e.g., Douglas v. Victor Capital Group, 21 F. Supp.2d 379, 393 (S.D.N.Y. 1998) (finding claims abandoned where plaintiff failed to address claims in opposition to defendants' summary judgment motion) (citations omitted).

Furthermore, as Defendants note, under New York Law, where a municipal employee is acting withing the scope of his employment,

the municipality's respondeat superior liability precludes a claim based on negligent hiring, supervision, and training. Velez v. City of N.Y., 730 F.3d 128, 137 (2d Cir. 2013) ("If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of respondeat superior[,] . . . because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the . . . adequacy of the training.") (quoting Karoon v. New York City Transit Auth., 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)). This line of caselaw also provides a basis for summary judgment dismissing the Fifth Cause of Action for negligent hiring, training and supervision of the Officers.

**E. Claims Against Officers McClellan and Santiago**

Plaintiff indicates that he does not oppose dismissal of Officers McClellan and Santiago from this action. See Dkt #47, p. 2. Defendants' motion for summary judgment dismissing the amended complaint therefore is granted as to Officers McClellan and Santiago.

**VI. Conclusion**

Defendants' motion for summary judgment (Dkt #43) is granted in part in denied in part. To the extent that the motion seeks dismissal of Officers McClellan and Santiago, the motion is

-14-

granted. All claims in the amended complaint against Officers McClellan and Santiago are dismissed with prejudice. The Clerk of Court is directed to terminate Officer McClellan and Officer Santiago as defendants in this action.

Defendants' motion for summary judgment dismissing the Fifth Cause of Action is granted, and that claim is dismissed.

The remainder of Defendants' motion for summary (Dkt #43) judgment is denied. Plaintiff's First, Second, Third, and Fourth Causes of Action remain pending against the City, Officer Potuck, and Officer Mason.

**SO ORDERED.**

**S/ Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: September 18, 2015
Rochester, New York